CHESTER R. SWEDE AND RAYMOND DE LUCA, PLAINTIFFS-APPELLANTS, v. CITY OF CLIFTON AND DEPARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued September 17, 1956—Decided October 15, 1956.

*Mr. Mervyn R. Montgomery* argued the cause for appellants (*Mr. John G. Dluhy,* attorney).

*Mr. John F. Crane,* Deputy Attorney-General, argued the cause for the respondent Department of Civil Service (*Mr. Grover C. Richman, Jr.,* Attorney-General, on the brief).

*Mr. John C. Barbour* argued the cause for the respondent City of Clifton.

The opinion of the court was delivered by

HEHER, J. We certified for appeal the judgment of the Appellate Division of the Superior Court affirming the de-

termination of the State Civil Service Commission that the Acting City Manager of Clifton had not transcended the Civil Service Act in the appointment of Philip A. Calderaro and Richard Hornby as sergeants in the local police department.

On February 14, 1955 the City Manager of Clifton, John L. Fitzgerald, called upon the Civil Service Commission to certify eligibles for appointment to two supposed vacancies in the office of police sergeant; on February 16 ensuing the Commission certified the names of the plaintiffs Swede and De Luca, and Calderaro and Hornby, all war veterans who had qualified in that order in a competitive promotional test of merit and fitness pursuant to *R. S.* 11:21–3; and two days later the Acting City Manager, William Holster, appointed No. 3 and No. 4 on the eligible list, Calderaro and Hornby, respectively, to fill the vacancies, effective March 1 thereafter.

Claiming a preferential right to appointment under *R. S.* 11:27–4, as amended by *L.* 1952, *c.* 48, Swede, No. 1, and De Luca, No. 2, appealed to the Civil Service Commission under *R. S.* 11:25–1, by petition filed February 23 following. But the appellants also, as taxpayers, on March 25 ensuing, brought a proceeding in lieu of prerogative writ in the Superior Court, joined by another taxpayer, one Sahaydak, *Docket* L–6331–54, challenging the legal existence of the offices to which the appointments were made, for want of a creative local ordinance under *R. S.* 40:48–1, and alleging also that the "purported promotional appointments were made contrary" to *R. S.* 11:27–4, in that the appointees "were not first on the certified list"; and that the resolution of the local governing body purporting to designate Holster as acting city manager "during the absence of John L. Fitzgerald, City Manager," "was not * * * in accordance with" *R. S.* 40:82–6, and Holster was not a "properly qualified" person for this local function within the intendment of the Municipal Manager Act, *R. S.* 40:79–1 *et seq.,* and "could not be appointed" as such, "due to the incompatibility of his position or office as City Engineer and the

office or position of Acting City Manager," and demanding judgment declaring the appointments of Calderaro and Hornby null and void, and the resolution designating the acting city manager also "null and void, or ineffectual only insofar as it purports to constitute the basis for the acts of Holster in promoting defendants."

This latter proceeding invoking the extraordinary judicial power exercisable by means of the old prerogative writs, now to be had of right under the 1947 Constitution, was not prosecuted and is still pending. The plaintiffs chose to pursue the administrative review afforded by the appeal to the Civil Service Commission in accordance with *R. S.* 11:25–1. And the selfsame issues were there raised. But the Commission ruled that the existence of the offices in question was an issue beyond its jurisdiction. The plaintiffs' claim of preference to appointment under the Civil Service Act was dismissed as ill-founded; the appointments were deemed to be within the authority conferred by *R. S.* 11:27–6, found to be unaffected by amendments of related sections of the act. And it was held that Holster, as acting city manager, was lawfully endowed with the power of appointment, and there had been no wrongful interference with the exercise of the function. Of this, more hereafter. The "action taken by the Acting City Manager" was "sustained," and the appeals dismissed. The Commission remarked: "It is difficult to comprehend the conclusion of counsel for the appellants that, in the event that it is decided that the appellants were entitled to appointment, then their names should be certified for appointment, despite the question relating to the creation and legal existence of the office."

The Appellate Division affirmed the judgment. 39 *N. J. Super.* 366 (1956). The holding was that the "existence of a position" is a question of "fact and law to be determined by the Law Division in a proceeding in lieu of prerogative writ," and so also the "question of whether Holster was properly appointed to and qualified to hold the office of acting city manager, which goes to the issue of whether he

was a *de jure* officer who could make a valid appointment." The argument that the veterans' preferences accorded by *R. S.* 11:27–4, as amended by *L.* 1952, *c.* 48, now applies also to promotions of the particular class was overruled; and it was found that there was no interference with the acting city manager in the making of the appointments.

The case is here by our certification on plaintiffs' motion.

Contending that an "existent office and a *de jure* appointing authority are conditions precedent to the effectiveness of agency action," it is urged that the "forum having primary jurisdiction of the cause was the Commission," and the Commission "was empowered to rule on all of the questions raised," those involving the existence of the offices and the *de jure* title of the appointing agency as well; that plaintiffs "have fulfilled their duty to raise and present all issues, in this proceeding, in order that the matter may be completely resolved," citing *Vacca v. Stika*, 21 *N. J.* 471 (1956), and the "ends of justice will be both served and expedited if all of the questions are disposed of on this one appeal."

Complaint is made that a "litigant is ofttimes beset with the problem of securing adequate administrative or judicial review"; and that here plaintiffs were "faced with several remedies": (1) a "proceeding in lieu of prerogative writ pursuant to *R. R.* 4:88–1, *et seq.*"; (2) a "summary review by way of petition before the Civil Service Commission under *R. S.* 11:25–1"; and (3) a "summary review" in the Superior Court "purportedly in lieu of prerogative writ, provided by *R. S.* 11:25–4, as amended," and these "three avenues of relief, although available to plaintiffs, contain possible procedural barriers to securing complete relief," a "fear" that "materialized, in the opinion of the intermediate tribunal," so it is said.

Reference is made to *R. R.* 4:88–14 as providing that "no proceedings in lieu of prerogative writ shall be maintainable 'so long as there is available * * * administrative review to an administrative agency or tribunal, which has not been exhausted;'" (there is no mention of the all-important qualifying clause, "Except where it is manifest that the

interests of justice require otherwise, * * *") ; and it is said that *Sullivan v. Roe,* 18 *N. J.* 156 (1955), counsels. caution "in attempting to by-pass primary administrative review," and "Uncertainty as to whether cases, such as the one at bar, come within the rule" of *Ward v. Keenan,* 3 *N. J.* 298 (1949), "or whether they may be affected by the admonition of the Court in the *Sullivan* case, presents a perplexing problem to plaintiffs."

Foreseeing "the possibility" that the Civil Service Commission "might decline to rule on some aspects of the case," "resort to the Commission was felt necessary—'to prevail there if possible and, if unsuccessful in whole or part, to be in a position to seek review in a Superior Tribunal,' " and the proceeding in lieu of prerogative writ was also invoked, although it is asserted that "the forum having primary jurisdiction of the within cause was the Commission," and "the controversy should have been fully heard on all issues and a final judgment entered." And counsel now contends that "no valid appointment may be made when either of the following facts are established, *viz.,* a *de facto* appointing officer, or a non-existent office," and the "Commission's action amounts to an official approval of two appointments 'in the Civil Service' even though they may be nugatory because, 1)—no office existed to which an appointment could be made, 2)—because the appointments were not made by a *de jure* appointing authority."

The "problem" was of counsel's own making. Although the then pending proceeding in lieu of prerogative writ provided a full and complete remedy in a judicial forum of general jurisdiction, not only in respect of the basic issues concerning the existence of the offices and the *de jure* status of the appointing officer, but as well the fulfillment of the rights of the parties under the statute pertaining to preferences for war veterans in civil service appointments, plaintiff pursued the summary administrative review afforded a citizen of the State by *R. S.* 11:25–1, limited as it was (and is) to relief against "violations" by a municipal agency of "any of the provisions" of the Civil Service Act "in selecting

persons for employment, or in the designation of an employee for appointment or in the suspension, removal, fine or reduction of employees from office." And the insistence is that the Commission does not exceed "its delegated powers when it determines its own jurisdiction to act within those delegated powers," and, at all events, the "record on appeal is factually complete" and all the issues so raised should be determined "on this one appeal."

Administrative discretion is special and limited, contained by the declared legislative policy to be executed by the agency and the specific means provided by the lawmaker to that end. The legislative grant is inclusive of such authority as is by fair implication and intendment incident to the agency's essential function and purpose; and where there is reasonable doubt of the existence of a particular power, the power is denied. All else would be *ultra vires*. Extrajurisdictional administrative acts are void. There cannot be "delegation running riot." *Hart, An Introduction to Administrative Law,* (2d ed.), 318, 330. Every agency has "a mere limited jurisdiction beyond which its acts are *ultra vires,* \* \* \*." *Parker, Administrative Law,* 117, 118 (1952). Such is the nature of the Civil Service Commission. *City of Newark v. Civil Service Commission,* 115 *N. J. L.* 26 (*Sup. Ct.* 1935); *Maguire v. VanMeter,* 121 *N. J. L.* 150 (*E. & A.* 1938); *Nagy v. Ford Motor Co.,* 6 *N. J.* 341 (1950).

A discretion may be judicial or it may be nonjudicial or legislative or executive. The grouping of the given function is determined by its essential quality, assessed in relation to the historic guaranties against the exertion of arbitrary power. The classification turns upon the nature of the act and the controls laid upon the exercise of the power by positive law and the grant itself. Unlike the case of *Handlon v. Town of Belleville,* 4 *N. J.* 99 (1950), here the Commission's particular concern has to do with the legislative or executive function attending the fulfillment of the legislative policy of classification, grading and appointment of civil servants in the statutory category according to merit

and fitness and the appointed preferences in favor of war veterans. Compare *State Board of Milk Control v. Newark Milk Co.*, 118 *N. J. Eq.* 504 (*E. & A.* 1935). See *In re Plainfield-Union Water Co.*, 11 *N. J.* 382 (1953), as to matters concerning ordinary administration conformably to standards governing duties of a purely executive character; also *Pennsylvania Railroad Co. v. New Jersey State Aviation Commission*, 2 *N. J.* 64 (1949).

■ For the full exercise of their statutory functions, administrative agencies are ordinarily empowered to determine all matters of fact and law that are "incidental to the main issue"; but, says Professor Parker, *Ibid*, 127, the "inclusion of these *Vorfragen* (pre-questions), as the Germans call them," concerns only "the scope of the realm of matters to be studied * * *, not the jurisdiction or power itself. The agency that must answer the pre-question whether somebody's marriage is valid does not have power to declare valid or annul marriages. It merely has the duty to treat as valid or invalid a marriage for the purpose of deciding another legal question that is properly before the agency, such as would be a question of veterans' benefits before the Veterans' Administration. In other words, the decision of whether or not a widow is to receive benefits makes it implicitly necessary to determine whether the party is a widow, but merely for the purpose of the pertinent statute. It is merely *pro tanto,* then, that the agency must pass on that question. We might call this power 'incidental jurisdiction.'"

■ It would seem that on reason and principle, in a case such as this, the incidental responsibility of the purely administrative agency would be to find whether there was ground for the assumption that the supposed offices to be filled had a colorable or apparent existence and the appointing officer was not a naked intruder or a mere usurper. See *Koven v. Stanley,* 84 *N. J. L.* 446 (*Sup. Ct.* 1913); *Buren v. Albertson,* 54 *N. J. L.* 72 (*Sup. Ct.* 1891). And a *de facto* officer is not on that account subject to such administrative removal as for cause. *Shibla v. Township Committee*

*of Wall Township,* 136 *N. J. L.* 506 (*Sup. Ct.* 1948), affirmed
137 *N. J. L.* 692 (*E. & A.* 1948).

The agency was not endowed with jurisdiction to make
the ultimate determination of the basic questions of the legal
existence of the police sergeancies at issue, nor the *de jure*
title of the officer presuming to exercise the appointing power
as acting city manager. This judicial power resides in the
Superior Court in virtue of the 1947 *Constitution, Article
VI, Section* III, *paragraph* 2, granting original general juris-
diction in all causes, and *Section* V, *paragraph* 4, authorizing
relief in lieu of prerogative writ "as of right, except in
criminal causes" where the review is still discretionary, an
exercise of the extraordinary power of the Crown that
originally was discretionary because it involved a direct inter-
ference with the liberty and property of the subject. *Fischer
v. Bedminster Township, Somerset County,* 5 *N. J.* 534
(1950); *Ex parte Thompson,* 85 *N. J. Eq.* 221 (*Ch.* 1915).
See also 3 *Steph. Comm.* 629. And there is no suggestion
of a legislative intent and purpose to confer upon the agency
concurrent jurisdiction to this end, assuming *arguendo* the
constitutional power so to do. The terms of the grant are
plainly not inclusive of this judicial power.

*R. S.* 11:25–1, in its pertinent clauses, merely authorizes
a "summary" inquiry into "violations" of the provisions of
the Civil Service Act in the "selection" of "persons for em-
ployment," or in the making of appointments, an adminis-
trative function legislative and executive in character having
no seeming relevance to the essentially judicial power con-
cerned with the legal existence of municipal offices and the
*de jure* status of the incumbents. Nor could the agency "be
presumed to possess the means of exercising such a broader
jurisdiction, with due justice and effect." *Comegys v. Vasse,*
1 *Pet.* 193, 7 *L. Ed.* 108 (1828), Story, J.

And the "prior resort" doctrine offered no obstacle
to the selection of a forum. *Sullivan v. Roe, supra,* is not
apropos. There was no need for recourse to the agency for
the administrative relief within its cognizance. The question
was one of law alone: Did the subsequent amendments of

related provisions work a repeal by implication of *R. S.* 11:27–6? The "exhaustion" rule proper has a limited application; and where, as in New Jersey, the administrative jurisdiction over the subject matter is not primary and exclusive, barring judicial review until after agency action, rather than merely concurrent or secondary power, in its essence discretionary, there is no occasion for invoking the doctrine unless there be also an issue essentially administrative involving agency expertness and discretion, in its nature peculiarly administrative rather than judicial. See Dean Stason's informative treatise, *"Timing of Judicial Redress from Erroneous Administrative Action,"* 25 *Minn. Law Rev.* 560, 566, 574, *et seq.;* also Professor Parker's pertinent observations in his *Administrative Law,* 114 *et seq.* And see these cases cited by Dean Stason: *Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co.,* 204 *U. S.* 426, 27 *S. Ct.* 350, 51 *L. Ed.* 553 (1907); *Great Northern Ry. Co. v. Merchants Elevator Co.,* 259 *U. S.* 285, 42 *S. Ct.* 477, 66 *L. Ed.* 943 (1922); *United States Navigation Co. v. Cunard Steamship Co.,* 284 *U. S.* 474, 52 *S. Ct.* 247, 76 *L. Ed.* 408 (1932); and the more recent case of *Far East Conference v. United States,* 342 *U. S.* 570, 72 *S. Ct.* 492, 96 *L. Ed.* 576 (1952); also *Hart, An Introduction to Administrative Law,* 719 *et seq.*

In New Jersey the "exhaustion" rule is one of convenience, not an indispensable pre-condition. *Gorab v. Borough of Wood-Ridge,* 133 *N. J. L.* 162 (*Sup. Ct.* 1945); *Redcay v. State Board of Education,* 128 *N. J. L.* 281 (*Sup. Ct.* 1942). It is neither jurisdictional nor absolute. *Nolan v. Fitzpatrick,* 9 *N. J.* 477 (1952). See *R. R.* 4:88–14.

And in New Jersey, under the old Constitution, prerogative writ intervention at the outset was the usual course where the jurisdiction of inferior tribunals and special statutory agencies was in question. *Mowery v. Camden,* 49 *N. J. L.* 106 (*Sup. Ct.* 1886); *City of Plainfield v. McGrath,* 117 *N. J. L.* 348 (*Sup. Ct.* 1936). See also *Zahodiakin Engineering Corporation v. Zoning Board of Adjustment of City of Summit,* 8 *N. J.* 386 (1952); *Fischer v. Bedminster Township, Somerset County, supra; State v. Court of Com-*

*mon Pleas,* 1 *N. J.* 14 (1948). And the right and title to a public office was triable only by an information in the nature of *quo warranto,* a prerogative jurisdiction now vested in the Superior Court by the 1947 Constitution. *Civil Service Commission v. Rife,* 128 *N. J. L.* 503 (*Sup. Ct.* 1942). If title to an office was the real subject of controversy, *quo warranto* was the exclusive legal remedy; the prerogative writ of *certiorari* was available only to the incumbent officer, to review action adverse to his rights. *Finnegan v. Miller,* 132 *N. J. L.* 192 (*Sup. Ct.* 1944). And this was so before an administrative review was had; the "exhaustion" rule was purely discretionary. *Koven v. Stanley, supra.* See also *Shibla v. Township Committee of Wall Township, supra; Ziegler v. City Council of City of Hackensack,* 114 *N. J. L.* 186 (*E. & A.* 1935).

Now, by *L.* 1953, *c.* 11, § 9, *N. J. S. A.* 11:25-4, when a municipal agency violates "any of the provisions" of the Civil Service Act, particularized as in *R. S.* 11:25-1 save as to "fine or reduction or employees," any citizen may have a "summary review" of such "illegal or unlawful action" by a proceeding in lieu of prerogative writ, akin to the "summary review" jurisdiction vested in the individual justices of the old Supreme Court by *R. S.* 11:25-4, derived from *L.* 1915, *c.* 120, as amended by *L.* 1935, *c.* 204.

But plaintiffs elected to pursue the administrative review for the enforcement of what was conceived to be preferential promotional rights under the Civil Service Act, the while denying the very existence of the supposed offices; and they cannot now have a review here of the fundamental issues not cognizable by the administrative agency. The disposition of these questions must await the record and judgment of a court of competent jurisdiction and the appeal essential to this court's jurisdiction.

We concur in the findings of the Commission, affirmed by the Appellate Division, that *R. S.* 11:27-6 has not been repealed by implication, and that there was no undue interference with the exercise of the appointing authority undertaken by the acting city manager.

 The question of repeal is essentially one of legislative intention; and there is a presumption as a matter of interpretive principle and policy against an intent to effect a repeal of legislation by mere implication. The purpose so to do must be free from all reasonable doubt. Repeals by implication are not favored in the law; and where the statutory provisions may reasonably stand together, each in its own particular sphere of action, there is not the repugnancy importing the design to repeal the earlier provision. *Kuberski v. Haussermann,* 113 *N. J. L.* 162 *(Sup. Ct.* 1934) ; *Goff v. Hunt,* 6 *N. J.* 600 (1951) ; *Henninger v. Board of Chosen Freeholders of Bergen County,* 3 *N. J.* 68 (1949). The history of the legislation here and the modifications of the associated sections concerned with the entrance grades, leaving *R. S.* 11:27–6 untouched in terms, bespeak a purpose to continue unchanged the promotional policy of that section.

 It is significant that *L.* 1946, *c.* 227, amended *R. S.* 11:27–1, 3, 4 and 5, and expressly repealed *R. S.* 11:27–2, but made no mention of *R. S.* 11:27–6. Although not in itself conclusive, a specific repealer is evidence of an intent that further repeals (by implication) are not intended. *Sutherland's Statutory Construction (3rd ed.), section* 2015.

Affirmed.

JACOBS, J., concurring in result.

*For affirmance*—Justices HEHER, OLIPHANT, BURLING and JACOBS—4.

*For remandment*—Justice WACHENFELD—1.