371 S.E.2d 46

Clinton COLLINS

v.

**ELKAY MINING CO., a corporation, and the Pittston Co., a corporation.**

No. 17624.

Supreme Court of Appeals of West Virginia.

March 17, 1988.

Lawrence B. Lowry, Barrett, Chafin, Lowry & Hampton, Huntington, for Clinton Collins.

Charles Surber, Jackson, Kelly, Holt, & O'F, Charleston, for Elkay Min. Co.

MILLER, Justice:

This is a wrongful discharge action instituted by Clinton Collins, a former tipple foreman, in which the trial court granted summary judgment for the defendant, Elkay Mining Company (Company). The trial court concluded that the plaintiff's retaliatory discharge claim under *Harless v. First Nat'l Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978), was barred by the plaintiff's failure to pursue State and federal administrative remedies, and that the plaintiff's independent cause of action based upon a breach of an implied contract of employment was not cognizable under West Virginia law. We reverse and remand for further proceedings.

## I.
## RETALIATORY DISCHARGE

The plaintiff alleged in his November, 1984 complaint that he had been laid off and subsequently discharged by the Company in retaliation for his refusal to "falsify certain safety reports" pertaining to a safety inspection at the Company's preparation plant where he was employed, and for his refusal to otherwise violate federal or State mine safety laws. He alleged that his discharge violated the established public policy of the State and, thereby, gave rise to a cause of action under the single Syllabus of *Harless:*

"The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge."

The trial court in addition to finding the plaintiff's action was barred for failure to exhaust his administrative remedies also concluded in its memorandum opinion that the plaintiff's administrative remedies were exclusive. The court based its conclusion upon the general rule that where a right not existing at common law is created by statute, the statutory remedy is exclusive. Since both the federal and State mine safety laws[1] contain antidiscrimination provi-

---

1. In certain circumstances, federal and State laws protect coal miners who report alleged violations of mine safety laws from adverse personnel action. The Federal Coal Mine Safety and Health Act, 30 U.S.C. § 820(b)(1) (1969), provided as follows:

"No person shall discharge or in any other way discriminate against or cause to be discharged or discriminated against any miner or any authorized representative of miners by reason of the fact that such miner or representative (A) has notified the Secretary or his authorized representative of any alleged violation or danger, (B) has filed, instituted, or caused to be filed or instituted any proceeding under this Act, or (C) has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this Act."

The current version of this statute, as amended, is found in Section 105(c)(1) of the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 815(c)(1); Annot., 67 A.L.R.Fed. 554 (1984).

Our State's Mine Safety Act, W.Va.Code, 22A–1A–20(a) (1985), states as follows:

"No person shall discharge or in any other way discriminate against or cause to be discharged or discriminated against any miner or any authorized representative of miners by reason of the fact that he believes or knows that such miner or representative (1) has notified the commissioner, his authorized representative, or an operator, directly or indirectly, of any alleged violation or danger, (2) has filed, instituted or caused to be filed or instituted any proceeding under this law, (3) has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this law. No miner or representative shall be discharged or in any other way discriminated against or caused to be discriminated against because a

sions which had been enacted prior to the *Harless* decision, the trial court found those administrative remedies to be exclusive.

In *Harless,* this Court adopted a limited exception to the common law rule that, in the absence of a written contract containing a fixed term of employment, an employee could be discharged for good reason, bad reason, or no reason at all. *Wright v. Standard Ultramarine & Color Co.,* 141 W.Va. 368, 382, 90 S.E.2d 459, 468 (1955). Our decision in *Harless* followed a number of jurisdictions which had concluded that an employee could not be fired in retaliation for exercising some substantial public policy right. *See* Annot., 9 A.L.R.4th 329 (1981).

We indicated in note 5 of *Harless,* 162 W.Va. at 124–25, 246 S.E.2d at 275, and in subsequent decisions that the cause of action was based on tort principles analogous to the common law concepts of fraud and deceit. *Harless v. First Nat'l Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982) (*Harless* II); *Stanley v. Sewell Coal Co.,* 169 W.Va. 72, 285 S.E.2d 679 (1981); *Shanholtz v. Monongahela Power Co.,* 165 W.Va. 305, 270 S.E.2d 178 (1980).

The trial court did not have the benefit of our decision in *Wiggins v. Eastern Associated Coal Corp.,* 178 W.Va. 63, 357 S.E.2d 745 (1987), when it rendered its decision. There the plaintiff, after allegedly being discharged by a coal company for safety-related activities, invoked the administrative remedy available to him under federal law and was ordered reinstated and awarded back pay and attorney's fees. He also brought a civil action in state court seeking compensatory and punitive damages for the retaliatory discharge. His spouse joined in the action, seeking damages for the intentional infliction of emotional distress.

In *Wiggins,* we rejected the theory relied upon by the trial court here, and concluded for a number of reasons that the administrative remedy was not exclusive. In Syllabus Point 2 of *Wiggins,* we held: "Where

miner or representative has done (1), (2), or (3) above."

the available administrative remedy is inadequate, this Court recognizes an exception to the general rule that where a new right is created by statute, the remedy can be only that which the statute prescribes." *See also Price v. Boone County Ambulance Auth.,* 175 W.Va. 676, 337 S.E.2d 913 (1985).

We found in *Wiggins* that the remedies available in federal and state administrative proceedings were not adequate to protect the substantial public policy interests embodied in our Mine Safety Act. We noted that damages recoverable in a tort action are broader than those available administratively and also observed that the primary purpose of the administrative remedy was different than the interests protected in a retaliatory discharge action. Both these considerations are reflected in the language of Syllabus Points 3 and 4 of *Wiggins:*

"3. The common law wrongful discharge action recognized in *Harless v. First Nat'l Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978) follows the applicable rules relating to tort damages, and permits a claim for damages caused by the intentional infliction of severe emotional distress, or, in the appropriate case, for the assessment of punitive damages.

"4. The primary purpose of the penalties imposed under the antidiscrimination provisions of the mine safety acts is to ensure the reporting of safety violations, rather than vindication of private interests, and victims of discrimination must look to the courts to receive full compensation for the violation of their legal rights."

In *Wiggins,* we also relied in part on "the silence of the [federal and State] statutes themselves on the exclusivity issue, and the fact that these safety statutes are to be construed liberally in favor of their intended beneficiaries, *State ex rel. Perry v. Miller,* 171 W.Va. 509, 300 S.E.2d 622 (1983)." 178 W.Va. at 66, 357 S.E.2d at 748.

A similar version of this provision was formerly contained in W.Va.Code, 21–1–21(a) (1971).

We found it unnecessary to decide in *Wiggins* whether a coal miner should be barred from pursuing his common law right of action for failure to pursue his administrative remedies, since the miner in that case had successfully pursued his administrative remedy available under federal law.

More recently in *Davis v. Kitt Energy Corp.*, 179 W.Va. 37, 365 S.E.2d 82 (1987), we considered an analogous issue involving whether the arbitration of a safety-related grievance under a collective bargaining agreement foreclosed an administrative claim for the same incident under our Mine Safety Act. We decided that it did not, holding in Syllabus Points 2, 3, and 4:

"2. W.Va.Code, 22A–1A–20, prohibits retaliatory conduct by employers against mine employees because of their reporting of violations of the Mine Safety Act.

"3. A mine safety committeeman who communicates a safety violation under the Mine Safety Act and enforces a procedural right given under the collective bargaining wage agreement, and who thereafter is subject to discrimination by his employer as a result thereof, is entitled to assert the protections afforded by W.Va.Code, 22A–1A–20.

"4. A miner against whom an arbitration decision has been rendered under a collective bargaining agreement involving a safety claim is not foreclosed from pursuing a discrimination remedy under W.Va.Code, 22A–1A–20." [2]

In this case, the Company argues based on legislative intent and policy grounds that exhaustion should be a prerequisite to a *Harless*-type action. We are not persuaded. Contrary to the Company's contention, the legislature in enacting the anti-discrimination provisions of W.Va.Code, 22A–1A–20 (1985), did not clearly express an intention that retaliation claims be resolved first administratively by the board of appeals. We find no language in W.Va. Code, 22A–1A–20 (1985), set forth, in part, in note 1, *supra*, reflecting any such legislative purpose.

The Company's argument that aggrieved employees will unquestionably circumvent the administrative remedy and pursue a tort action is speculative at best.[3] Just the opposite conclusion may be more probable in view of the statutory requirement of W.Va.Code, 22A–1A–20(b) (1985), that the board of appeals issue a decision within forty-five days and the further provision that the miner shall be automatically reinstated until a final determination is made, if the proceedings are not completed within forty-five days of the discharge due to delay caused by the operator.[4] In addition to

---

**2.** Our decision in *Davis* was predicated on several United States Supreme Court cases to the effect that provisions in a wage agreement cannot supplant statutory rights. *E.g., McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

**3.** Certainly, where both avenues are pursued, it is clear from *Wiggins* a duplicate recovery cannot be obtained "because '[d]ouble recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury.' Syl.Pt. 7, *Harless* II, 169 W.Va. 673, 289 S.E.2d 692." 178 W.Va. at 66, 357 S.E.2d at 748.

**4.** W.Va.Code, 22A–1A–20(b) (1985), affords any miner or representative of miners who has been discharged or otherwise discriminated against the right to:
"[A]pply to the appeals board for a review of such alleged discharge, discrimination, or fail-

ure to compensate.... Upon receipt of such application, the appeals board shall cause such investigation to be made as it deems appropriate.... Upon receiving the report of such investigation, the board shall make findings of fact. If it finds that such violation did occur, it shall issue a decision within forty-five days, incorporating an order therein, requiring the person committing such violation to take such affirmative action to abate the violation as the board deems appropriate, including, but not limited to, the rehiring or reinstatement of the miner or representative of miners to his former position with back pay.... If the proceedings under this section relative to discharge are not completed within forty-five days of the date of discharge due to delay caused by the operator, the miner shall be automatically reinstated until the final determination. If such proceedings are not completed within forty-five days of the date of discharge due to delay caused by the board, then the board may, at its option, reinstate the miner until the final determination."

providing a more expeditious resolution of the claim, the administrative remedy provides that the claimant recover "a sum equal to the aggregate amount of all costs and expenses including the attorney's fees." W.Va.Code, 22A–1A–21(c).[5] Ordinarily, in a *Harless*-type retaliatory discharge action, the plaintiff is not entitled to recover his attorney's fees. Thus, the administrative remedy provides a further incentive for its utilization.

Nor are we convinced that permitting a *Harless*-type action without requiring the exhaustion of administrative remedies will render the administrative remedy meaningless. The existence of both an administrative and judicial remedy will further the legislative purpose of protecting employees from discrimination for their safety-related activities. Not requiring exhaustion will effectuate the legislative purpose, not frustrate it.

The New Jersey Supreme Court in *Lally v. Copygraphics*, 85 N.J. 668, 428 A.2d 1317 (1981), arrived at the same conclusions we have reached in an analogous situation involving a worker who was allegedly discharged for filing a workers' compensation claim. The court held on public policy grounds that a common law retaliatory discharge action existed, despite the availability of an express administrative remedy under the state workers' compensation law. The *Lally* court stated, 85 N.J. at 670–71, 428 A.2d at 1318:

"A common law action for wrongful discharge in this context will effectuate statutory objectives and complement the legislative and administrative policies which undergird the workers' compensation laws. The determination of the Appellate Division that the statutory treatment of this kind of retaliatory firing is not preemptive of a civil right of redress is sound. 173 *N.J.Super.* at 170–172, 179, 413 A.2d 960."

The New Jersey court stressed the importance of the interests protected by the legislation and concluded at 85 N.J. at 672–73, 428 A.2d at 1319:

"The jurisdiction to redress an unlawful retaliatory discharge is concurrent. The election is that of the plaintiff. She may choose, at her complete discretion, an administrative route, which though arguably not as complete as a civil action in a court of law, may be less involved, time consuming, and expensive. Moreover, as pointed out by the Appellate Division, *id.* at 177, 413 A.2d 960, the Legislature itself recognized the expertise, experience and sensitivity of the Commissioner in these matters. An aggrieved discharged employee might well believe these considerations to be important in assessing which remedial path to follow."

*See also Hentzel v. Singer Co.*, 138 Cal. App.3d 290, 188 Cal.Rptr. 159 (1982) (plaintiff in retaliatory discharge action not required to exhaust administrative remedies under California Occupational Safety and Health Act); Annot., 35 A.L.R.4th 1031 (1985).

The Minnesota Supreme Court also recently permitted a retaliatory discharge action to proceed without requiring the exhaustion of administrative remedies in *Brevik v. Kite Painting, Inc.*, 416 N.W.2d 714 (Minn.1987). There, according to the stipulated facts, two employees had been discharged for exercising their rights under a state health and safety law. In rejecting the employer's exhaustion of remedies argument, the court stated: "Plaintiffs' claim is not outside the conventional experience of judges and does not require the exercise of administrative discretion. Therefore, we conclude that plaintiffs' retaliatory discharge claim may proceed in district court notwithstanding the potential administrative remedy available to them." 416 N.W.2d at 719.

**5.** W.Va.Code, 22A–1A–20(c) (1985) reads:
"Whenever an order is issued under this section, at the request of the applicant, a sum equal to the aggregate amount of all costs and expenses including the attorney's fees as determined by the board to have been reasonably incurred by the applicant for, or in connection with, the institution and prosecution of such proceedings, shall be assessed against the person committing such violation."

Although we did not decide the exhaustion issue in *Wiggins*, we did recognize in Syllabus Point 5 that the doctrine of administrative exhaustion is not jurisdictional in nature: "The general requirement of the exhaustion of administrative remedies is not a jurisdictional doctrine, but is a matter of comity, within the discretion of the trial court." Again, the Supreme Court of New Jersey in *Abbott v. Burke*, 100 N.J. 269, 297, 495 A.2d 376, 391 (1985), in discussing exhaustion concepts, recently stated:

"We note that the preference for exhaustion of administrative remedies is one 'of convenience, not an indispensable pre-condition.' *Swede v. City of Clifton*, 22 *N.J.* 303, 315, 125 *A.* 2d 865 (1956). Thus, except in those cases where the legislature vests exclusive primary jurisdiction in an agency, a plaintiff may seek relief in our trial courts. *Borough of Matawan v. Monmouth County Board of Taxation*, 51 *N.J.* 291, 296, 240 *A.*2d 8 (1968) (administrative exhaustion not an absolute jurisdictional requirement). In any case amenable to administrative review, however, upon a defendant's timely petition, the trial court should consider whether exhaustion of remedies will serve the interests of justice." [6]

We made much this same point in Syllabus Point 6 of *Wiggins*, where we said: "This Court will not require the exhaustion of administrative remedies where such remedies are duplicative or the effort to obtain them futile." *See also State ex rel. Arnold v. Egnor*, 166 W.Va. 411, 421–22, 275 S.E.2d 15, 22 (1981); 3 K. Davis, Administrative Law Treatise §§ 20.01–20.10 (1958); 2 Am.Jur.2d, *Administrative Law* §§ 602–606 (1962).

We do not believe the interests of justice would be served by requiring coal miners to pursue their administrative remedies, as a prerequisite to bringing an action in court alleging a retaliatory discharge for safety-related activities. Unlike the situation in *Abbott*, which involved complex constitutional questions of a specialized nature concerning that state's system of funding its educational system, retaliatory discharge claims should be comparatively simple and will involve issues similar to those which courts frequently encounter in other areas of the law.[7]

■ We, therefore, conclude that a coal miner may institute a common law *Harless*-type retaliatory discharge action for acts that were designed to enforce the mandates of the coal mine health and safety statutes directly in circuit court without first resorting to an administrative remedy.

The trial court's order granting summary judgment on the wrongful discharge claim must, therefore, be reversed.

## II.

## EMPLOYMENT CONTRACT

The pleadings reveal that the plaintiff was hired by the Company in February, 1970, and was thereafter promoted to a salaried supervisory position in October, 1974. The plaintiff alleged that by virtue of an express or implied employment contract, he was entitled to hold that position until his retirement; provided, that he performed his job duties competently and satisfactorily. He further alleged that he had satisfactorily and competently performed every duty assigned to him and that his

---

**6.** The New Jersey court went on to state, quoting from *Garrow v. Elizabeth Gen. Hosp. and Dispensary*, 79 N.J. 549, 561, 401 A.2d 533, 539 (1979):

"'[t]he exhaustion doctrine is not an absolute. Exceptions exist when only a question of law need be resolved ...; when the administrative remedies would be futile ...; when irreparable harm would result ...; when jurisdiction of the agency is doubtful ...; or when an overriding public interest calls for a prompt judicial decision.... The assertion of a constitutional right may be one factor to be con-

sidered in determining whether judicial intervention is justified—but it is only one of many relevant considerations...." (Citations omitted).

**7.** Furthermore, there may be cases where the facts which state a cause of action under *Harless* would not come within the antidiscrimination provisions of either federal or State law. Indeed, here, the plaintiff argues that his conduct is not protected by federal and State law. We need not need resolve that precise issue here. *See United Mine Workers of America v. Miller*, 170 W.Va. 177, 182, 291 S.E.2d 673, 678 (1982).

termination was an unlawful breach of his employment contract.

The plaintiff argued below, as he does here, that he was induced by the Company to transfer to his supervisory position from the bargaining unit by representations assuring him continued employment until reaching retirement age. The plaintiff also stated in his deposition testimony that he had been induced by various publications of the Company, which promised him and his family financial security until retirement.

■ The trial court concluded that the plaintiff's implied contract claim was not cognizable under West Virginia law. Just a few days after the trial court granted summary judgment in favor of the Company, this Court, joining a growing trend in other jurisdictions, rendered its decision in *Cook v. Heck's Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986). The Court concluded that employee handbooks or policy manuals containing express or implied promises may create a binding contract, and stated in Syllabus Points 5 and 6:

"5. A promise of job security contained in an employee handbook distributed by an employer to its employees constitutes an offer for a unilateral contract; and an employee's continuing to work, while under no obligation to do so, constitutes an acceptance and sufficient consideration to make the employer's promise binding and enforceable.

"6. An employee handbook may form the basis of a unilateral contract if there is a definite promise therein by the employer not to discharge covered employees except for specified reasons."

Consequently, the case must be remanded to permit the plaintiff to proceed on the contract claim in whatever manner he may believe proper and to allow reevaluation of the facts by the trial court in view of the principles underlying our decision in *Cook*.

In resolving these procedural issues, we express no views as to the merits of the underlying claims. For the foregoing reasons, the judgment of the Circuit Court of Logan County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

BROTHERTON, Justice, dissenting:

I object strongly to both the Court's holding that utilization of statutory remedies is not a necessary prerequisite to a suit for wrongful discharge, and its holding that the plaintiff's implied contract claim is cognizable under West Virginia law.

I.

Allowing disgruntled employees to sue in state court without first pursuing their administrative remedies guts the remedies provided by federal and state legislatures in the mine safety statutes, and burdens the courts of this State with cases that could be more fairly and more efficiently resolved in the administrative systems established expressly for this purpose. It ordinarily is presumed that when a legislature provides a remedial scheme along with its enactment of statutory proscriptions of unjust dismissal, the administrative procedures provided in the statute are sufficient to protect the public policy in issue. *See, e.g., Wolk v. Saks Fifth Avenue, Inc.*, 728 F.2d 221 (3d Cir.1984) (claim for wrongful discharge may be maintained only in the absence of statutory remedy); *Taylor v. Brighton Corp.*, 616 F.2d 256 (6th Cir.1980) (statutory remedies for corporate retaliation against employees exercising rights protected by statute held exclusive); *Braun v. Kelsey–Hayes Co.*, 635 F.Supp. 75, 80 (E.D.Pa.1986) (statutory remedy for discharge on account of "whistle-blowing" activities is exclusive and preempts any state court action).

The Supreme Court of Oregon has decided a case virtually identical to this one. In *Walsh v. Consolidated Freightways, Inc.*, 278 Or. 347, 563 P.2d 1205 (1977), the plaintiff, like Collins, filed a tort-based cause of action for retaliatory discharge based on a public policy exception similar to that recognized in *Harless v. First Nat'l Bank*, 162 W.Va. 116, 246 S.E.2d 270 (1978). Faced with this conflict between the legislatively created administrative remedies, and the

court-created public policy exception to the at-will employment doctrine, the court in *Walsh* reasoned:

Although the situation in this case is similar [to the case establishing the public policy exception to the at-will doctrine], there is one decisive difference. It is true, of course, that the community has a strong interest in maintaining safe working conditions. That interest has been expressed in both state and federal statutes (citations omitted). Correspondingly, we would agree that employers should not be allowed to discharge employees solely for complaining about safety problems. However, unlike the situation in [the other case], an employee who is discharged because he complained of a safety violation *is* provided remedy under existing law for his wrongful discharge.

563 P.2d at 1208.

The United States District Court for the Southern District of West Virginia has read *Harless* in a similarly restrictive manner. In *Guevara v. K–Mart Corporation*, 629 F.Supp. 1189 (S.D.W.Va.1986), Chief Judge Haden held that an alleged victim of national origin discrimination was limited to the exclusive remedies provided by the West Virginia Human Rights Act and that the plaintiff could not prosecute a *Harless*-type action for abusive discharge and outrageous conduct. *Cf. San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) (NLRB has exclusive jurisdiction over matters which are arguably protected or prohibited by the National Labor Relations Act). In accord with these authorities, I would limit the application of *Harless* to cases in which there is no existing statutory remedy for the wrong alleged.[1]

Further, I believe the majority overstates the holding in *Wiggins v. Eastern Assoc. Coal Corp.*, 178 W.Va. 63, 357 S.E.2d 745

(1987). Read narrowly, the case merely says that a plaintiff may sue in state court for damages that are not available in an administrative action, such as anguish, stress, degradation, and the cost of psychiatric care. *See* 178 W.Va. at 66, 357 S.E.2d at 748 (quoting *Holien v. Sears, Roebuck and Co.*, 298 Or. 76, 689 P.2d 1292 (1984)). No such allegation was made by Mr. Collins. Similarly, the plaintiff in *Wiggins* had exhausted his federal administrative remedy, and the case did not, therefore, address the issue presented here. The issue in *Wiggins* was whether requiring exhaustion of state administrative remedies would duplicate the federal administrative process.

A holding that the administrative remedies are exclusive would best promote the orderly resolution of retaliatory discharge claims. At a minimum, this Court should require exhaustion of either state or federal remedies prior to institution of suit in state court.

It appears that access to our courts as a parallel forum for enforcing statutory rights can be restricted only by the Legislature, and I urge the Legislature to add such provisions to existing acts, and to include them in future legislation, if it intends an effective administrative forum for resolution of claims.

## II.

Finally, the Court's consent to allow Mr. Collins to pursue a claim for breach of an implied contract is nothing short of frightening. If a contract for perpetual employment can be found based on the fact that an employer described the company's pension benefits to a salaried employee, the doctrine of at-will employment is truly dead. The majority's reliance on *Cook v. Heck's, Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986), is misplaced. There was no employee handbook in this case—only some rather vague references to papers that described

---

1. Although cited by the majority as support for its holding, *Price v. Boone County Ambulance Auth.*, 175 W.Va. 676, 337 S.E.2d 913 (1985), was premised on a finding that the administrative procedures established by statute for redressing human rights claims had proved to be totally inadequate. *Id.* at 916. *Price* was never intended to open the floodgates for full-scale circumvention of administrative remedies in general. Significantly, *Price* explicitly restricted damages awarded in state court to those authorized by statute to be awarded by an administrative tribunal. *Id.*, syl. pt. 2.

pension benefits. Also, the Court in *Cook* made clear that even an employee handbook could only form the basis for a unilateral contract where it includes a definite promise only to discharge employees for certain specified reasons. *Id.,* syl. pt. 6. *Accord, Zeedick v. Thomas Memorial Hospital,* No. 2:85–01787 (S.D.W.Va. June 5, 1986). Similarly, the Fourth Circuit Court of Appeals in an unpublished decision rejected a claim that a West Virginia employer's retirement plan and stock participation plan created an implied-in-fact contract of employment. *Speelman v. Smith Transfer Corp.,* 790 F.2d 889 (4th Cir.1986) (table).

Moreover, even if West Virginia recognized implied-in-fact employment contracts, Mr. Collins has only testified that the company would keep him on as long as his performance was satisfactory and competent. Even in states that recognize implied employment contracts, an agreement for "satisfactory performance" is not enforceable because it is a purely subjective term measured by the employer. *See, e.g., Gordon v. Matthew Bender & Co.,* 562 F.Supp. 1286, 1291–92 (N.D.Ill.1983).

For the reasons set out herein, I respectfully dissent.

I am authorized to state that Justice NEELY joins in this dissent.