Argued February 8, affirmed in part; reversed in part May 10, 1977

WALSH, *Respondent—Cross-Appellant,*
*v.*
CONSOLIDATED FREIGHTWAYS, INC.,
*Appellant—Cross-Respondent.*
(No. 401-542, SC 24509)
563 P2d 1205

Jeffrey M. Batchelor, of Gearin, Cheney, Landis, Aebi & Kelley, Portland, argued the cause and filed briefs for appellant—cross-respondent.

John R. Barker, Portland, argued the cause for respondent—cross-appellant. With him on the brief were William R. Miller, Jr., and Jones, Lang, Klein, Wolf & Smith, Portland.

Before Denecke, Chief Justice, and Tongue, Howell, Bryson, Lent, Linde and Mengler, Justices.

HOWELL, J.

**HOWELL, J.**

This is a tort action in which plaintiff's complaint alleged two separate causes of action. The first alleges that plaintiff was wrongfully discharged from his employment by the defendant and seeks compensatory damages for lost wages and mental anguish, as well as punitive damages. In his second cause of action, plaintiff seeks additional compensatory and punitive damages for defamation and for interference with his contractual relationship with a subsequent employer. The trial court granted defendant's motion for a judgment of involuntary nonsuit with respect to plaintiff's second cause of action, but submitted his first cause of action to the jury and entered a judgment for the plaintiff on the jury's verdict. Defendant appeals from that judgment, and plaintiff cross appeals from the nonsuit of his second cause of action. Because the respective issues raised by the appeal and the cross-appeal are distinct and relate to different facts, we will discuss the appeal and the cross-appeal separately.

## THE APPEAL

■ There was conflicting evidence concerning many of the facts pertinent to defendant's appeal, but because of the jury's verdict for plaintiff, we must resolve all conflicts against the defendant and view the facts in the light most favorable to plaintiff. *See, e.g., Myers v. Cessna Aircraft,* 275 Or 501, 553 P2d 355 (1976).

Plaintiff worked intermittently as a "casual" dockman for defendant at its Portland terminal from June of 1968 through December of 1972. Casual employees work primarily as replacements for regular employees who are on vacation or otherwise unavailable for work. They also fill in during peak periods of business. The casuals are not covered under any union contract and have no formal seniority or grievance procedure rights.

Because plaintiff was attending college, he worked only during the summer months of the first four years

in which he was employed by the defendant. After his graduation in 1972, however, he worked steadily through the summer and fall months except for three weeks in October in which he was off because of an industrial accident.

Defendant admits that it never complained to plaintiff about his work performance or otherwise indicated that it was dissatisfied with his work. While the evidence regarding plaintiff's work habits was in substantial conflict, one of plaintiff's co-workers testified that plaintiff was a good and productive employee. The evidence also indicates that plaintiff was regularly asked to work Sundays and that normally only the more productive and experienced casuals were selected to work on Sundays. However, there was also evidence that plaintiff attempted to organize the casual employees, although they were not covered by the union contract.

One of defendant's forklifts was an older, gas-powered model which was defective. Its exhaust system emitted "blue clouds of smoke" which had a noxious odor and made it uncomfortable to work near the forklift in enclosed areas. Starting in about October, 1972, several of defendant's employees began complaining about this problem which they believed presented a health hazard, and they brought the matter to the attention of their foremen, their supervisor, and the union representative. Since a replacement machine had been ordered, defendant's terminal manager decided not to attempt to repair the forklift but ordered that it be used only in areas isolated from most of the workers as much as possible.

On the evening of December 12, 1972, the last day that plaintiff worked for the defendant, the defective forklift was being operated in plaintiff's unisolated work area "quite a bit" and it was "putting out those fumes." Plaintiff complained rather adamantly to his foreman and to the union representative but he was rebuffed. After that evening, plaintiff was terminated

by defendant's terminal manager, who crossed plaintiff's name off the list of available casuals and added the notation, "don't use." Despite repeated inquiries, plaintiff was never informed of the reason for his discharge.

■ Defendant's first two assignments of error related to the trial court's actions in denying defendant's motions for an involuntary nonsuit and for a directed verdict. Essentially, defendant's position in these motions was that (1) plaintiff failed to produce sufficient evidence to present a jury question on the reason for his discharge and, (2) in any event, plaintiff's termination was not of the kind which would create a cause of action for wrongful discharge. Because we agree with defendant's second contention, we find it unnecessary to discuss the first.

In *Nees v. Hocks,* 272 Or 210, 536 P2d 512 (1975), we held that the community's interest in having citizens serve on juries was sufficiently great that employers could not be allowed to discharge employees solely for refusing to ask to be excused from jury duty. Because no other remedy existed for the wrongfully discharged employee, we allowed the employee to recover compensatory damages in tort.

Although the situation in this case is similar, there is one decisive difference. It is true, of course, that the community has a strong interest in maintaining safe working conditions. That interest has been expressed in both state and federal statutes. *See, e.g.,* ORS 654.001 *et seq.*; 29 USC § 660(c) (1970); 29 CFR § 1977.9(c) (1975). Correspondingly, we would agree that employers should not be allowed to discharge employees solely for complaining about safety problems. However, unlike the situation in *Nees,* an employee who is discharged because he complained of a safety violation *is* provided a remedy under existing law for his wrongful discharge.

[ 351 ]

Pursuant to 29 USC § 660(c), an employee who feels he has been discharged for reporting a safety or health violation can file a complaint with the Department of Labor within 30 days of his discharge and the Department will then investigate the charge. Under the statute, the Department is authorized to bring an action in federal district court if it finds that the employee has been wrongfully discharged, and the court can order "all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay." Moreover, it is apparent that plaintiff was aware of this remedy, for the record indicates that he, in fact, did file a complaint pursuant to 29 USC § 660(c). Shortly thereafter, however, plaintiff took an extended trip to Europe, and the record does not reflect the eventual disposition of this complaint.

We feel that existing remedies are adequate to protect both the interests of society in maintaining safe working conditions and the interests of employees who are discharged for complaining about safety and health problems. We also note that ORS 654.062(5) now provides a similar remedy under state law although, admittedly, these provisions were not in effect at the time of the conduct in question.[1] Therefore, we

[1] ORS 654.062(5) provides, in part:

"(5)(a) No person shall bar or discharge from employment or otherwise discriminate against any employe or prospective employe because such employe has opposed any practice forbidden by ORS 654.001 to 654.295, made any complaint or instituted or caused to be instituted any proceeding under or related to ORS 654.001 to 654.295, or has testified or is about to testify in any such proceeding, or because of the exercise of such employe on behalf of himself or others of any right afforded by ORS 654.001 to 654.295.

"(b) Any employe or prospective employe who believes that he has been barred or discharged from employment or otherwise discriminated against in compensation, or in terms, conditions or privileges of employment, by any person in violation of this subsection may, within 30 days after he has reasonable cause to believe that such a violation has occurred, file a complaint with the Labor Commissioner alleging such discrimination under the provisions of ORS 659.040. Upon receipt of such complaint the Labor Commissioner shall process the complaint

find it unnecessary to extend an additional tort remedy to cover this kind of situation. Correspondingly, we conclude that the trial court erred in overruling defendant's motions for an involuntary nonsuit and for a directed verdict with respect to plaintiff's cause of action for wrongful discharge, and we hold that judgment should be entered for defendant on that cause.[2]

## THE CROSS-APPEAL

■ Plaintiff makes two assignments of error in connection with his cross-appeal. Each assignment concerns the trial court's action in granting defendant's motion for a judgment of involuntary nonsuit on plaintiff's second cause of action: the first assignment of error relates to plaintiff's defamation count, the second to his count for intentional interference with contractual relations. In passing on the propriety of the allowance of the judgment of involuntary nonsuit, the facts must be viewed in the light most favorable to plaintiff.

The allegedly tortious conduct occurred during a conversation between defendant's terminal manager and the terminal manager at Pacific Motor Trucking Co., where plaintiff went to work after he was discharged by the defendant. There was evidence that shortly after this conversation, plaintiff was fired by Pacific Motor Trucking Co.

and case under the procedures, policies and remedies established by ORS 659.010 to 659.110 and the policies established by ORS 654.001 to 654.295 in the same way and to the same extent that the complaint would be processed by the Labor Commissioner if the complaint involved allegations of unlawful employment practices based upon race, religion, color, national origin, sex or age under subsection (4) of ORS 659.030. The affected employe shall also have the right to bring a suit in any circuit court of the State of Oregon against any person alleged to have violated this subsection. The Labor Commissioner or the circuit court may order all appropriate relief including rehiring or reinstatement of the employe to his former position with back pay."

[2]Because of this conclusion, we find it unnecessary to consider defendant's other assignments of error.

■ Defendant's terminal manager testified to this conversation as follows:

"Q. Do you recall your conversation with Mr. Williams [then Terminal Manager for P.M.T.] about Mr. Walsh?

"A. Faintly, yes.

"Q. Can you tell the jury, to the best of your recollection, the substance of that conversation about what Mr. Williams said to you and what you said back to him?

"A. I don't recall whether it was by telephone or otherwise, because I had some contact with Mr. Walsh or Mr. Williams. As I recall, the gist of the conversation was, 'We have recently started using a casual that used to work for you. I noticed from his background and his education that he appears to be pretty well qualified. What do you think of him as a supervisor or potential supervisor?'

"Q. And what was your response?

"A. I told him I wouldn't hire him as a supervisor for Consolidated Freightways.

"Q. Did you tell him anything else?

"A. Obviously, he asked me why, and I told him that *I felt that the entire work record of Tom in the last—you know, from what had been told to me, based upon his agitation on the dock among the other casuals, and the fact that I felt that possibly that he had called O.S.H.A. as a retaliatory measure because we quit using him.*

"Q. You told Mr. Williams that Mr. Walsh had filed an O.S.H.A. complaint against you or you felt that he had?

"A. I think I stated that there was a possibility that he had filed one as a retaliatory measure after he left our employment, and I really had no basis other than hearsay, until Mr. Walsh's deposition several months ago." (Emphasis supplied.)

At another point, the terminal manager added the following testimony:

"A. I think in the course of our conversation describing what I felt Mr. Walsh's work performance was and the type of individual he was, *I felt that he was not the type of an individual who would fit in a supervisory*

*capacity.* I felt that there was evidence in my mind that I wouldn't hire that type of an individual as a supervisor." (Emphasis supplied.)

Plaintiff contends that these statements give rise to a cause of action for defamation and that this issue should have been submitted to the jury.

We have no doubt that the comments described above could have been understood to be defamatory. *See, e.g.,* 3 Restatement of Torts 139, § 558 (1938); W. Prosser, The Law of Torts § 111 (1971). The statements impugned plaintiff's work record.

There was also evidence which indicated that these comments were understood to be defamatory and that plaintiff lost his job as a result of the conversation in question. Moreover, because of the conflict in the evidence about plaintiff's work habits, the jury could have concluded that the statements were false.

■ The defendant, however, contends that the comments of its terminal manager on plaintiff's work record were privileged as a matter of law. This is a matter of defense, and the defendant has the burden of proof on this issue.

■ The law clearly recognizes that a former employer has a qualified privilege to make defamatory communications about the character or conduct of his employees to present or prospective employers. *See, e.g.,* 3 Restatement of Torts, supra at 247, § 595, and Comment (h) at 252-53; W. Prosser, supra at 788, § 115. Moreover, in this case, plaintiff's applications for employment at both the defendant corporation and Pacific Motor Trucking contained a release which authorized the defendant to furnish information concerning plaintiff's work record to Pacific Motor Trucking. However, this kind of privilege is not absolute, and if the privilege is abused the defendant will still be liable to the plaintiff. 3 Restatement, supra § 599 *et seq.*; W. Prosser, supra at 792-96, § 115.

■ As Prosser states:

"The condition attached to all such qualified privileges is *that they must be exercised in a reasonable manner and for a proper purpose.* The immunity is forfeited if the defendant steps outside of the scope of the privilege, or abuses the occasion. * * *.

"* * * * *.

"* * * Furthermore, the qualified privilege will be lost if the defendant publishes the defamation in the wrong state of mind. The word 'malice,' which has plagued the law of defamation from the beginning, has been much used in this connection, and it frequently is said that the privilege is forfeited if the publication is 'malicious.' * * * *Perhaps the statement which best fits the decided cases is that the court will look to the primary motive or purpose by which the defendant apparently is inspired.* Discarding 'malice' as a meaningless and quite unsatisfactory term, it appears that *the privilege is lost if the publication is not made primarily for the purpose of furthering the interest which is entitled to protection.* * * *

"Finally, since there is no social advantage in the publication of a deliberate lie, the privilege is lost if the defendant does not believe what he says. Many courts have gone further, and have said that it is lost if the defamer does not have reasonable grounds, or 'probable cause' to believe it to be true, while others have insisted that good faith, no matter how unreasonable the basis, is all that is required. * * * Probably the best statement of the rule is that the defendant is required to act as a reasonable man under the circumstances, with due regard to the strength of his belief, the grounds that he has to support it, and the importance of conveying the information." Id. at 792-96. (Emphasis supplied; footnotes omitted.)

*See also* 3 Restatement of Torts, supra § 600 *et seq.*

■ ■ The burden of proving an abuse of the qualified privilege, however, rests upon the plaintiff. W. Prosser, *supra* at 796, § 115. Evidence that defendant's terminal manager did not believe the statements he made about the plaintiff would tend to show that the privilege was abused. Plaintiff asserts that there was

[ 356 ]

testimony from others that he was a good and productive worker, and he contends that the essence of the defamatory statement was that he was "an incompetent employee for defendant and not fit for employment at P.M.T." Although we believe that the defamatory statement could well have been understood in that manner, we do not believe that the mere fact that others thought plaintiff was a good worker justifies an inference that the defendant's terminal manager must have thought so, too.

Plaintiff also contends that there was evidence that there was a general company policy not to release information on the work habits of previous employees, that publication of the defamatory statement about plaintiff was in violation of that policy and that, therefore, the publication must have been motivated by spite or ill will—perhaps as a result of plaintiff's complaint to the O.S.H.A. officials. Assuming that such a general policy of nondisclosure existed, we do not believe that its violation in this particular case would justify an inference that defendant's terminal manager was proceeding in bad faith in publishing the defamatory information about plaintiff. The evidence is clear that defendant's terminal manager and the terminal manager for Pacific Motor Trucking were business acquaintances who met monthly and who knew each other personally. This personal acquaintance would form a sufficient basis for making an exception to the general company policy of nondisclosure and, in our view, adequately rebuts any contrary inference which might otherwise arise from a deviation from ordinary practices. Therefore, we conclude that plaintiff did not introduce sufficient evidence to create a jury question as to whether defendant abused its qualified privilege and that the trial court properly granted defendant's motion for a judgment of involuntary nonsuit with respect to plaintiff's defamation count.

We also conclude that the trial court properly granted the nonsuit on plaintiff's count for intentional

interference with contractual relations. Assuming that an otherwise actionable interference was shown, the issue of justification or privilege remained. *See, e.g.,* W. Prosser, supra at 942-44, § 129; 4 Restatement of Torts, supra at 85, § 772. The same evidence which we considered on the questions of a qualified privilege and defendant's abuse of that privilege in relation to the defamation count is applicable to this count as well. For essentially the same reasons that we discussed there, we conclude that the evidence established that defendant had a qualified privilege to interfere with plaintiff's relationship with Pacific Motor Trucking and that plaintiff has not shown that the privilege was abused. Correspondingly, we hold that the judgment of involuntary nonsuit entered on plaintiff's count for intentional interference with contractual relations was proper.

Reversed in part, affirmed in part.