**Sam GIBBS, Plaintiff—Appellant,**

v.

**ORKIN EXTERMINATING COMPANY, a Delaware corporation, Defendant—Appellee.**

No. 02–35539.

D.C. No. CV–01–00667–AS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 7, 2003.

Decided Aug. 21, 2003.

Before SCHROEDER, Chief Judge, HUG, and BERZON, Circuit Judges.

## MEMORANDUM *

After resigning from his position as Portland Branch Manager for Orkin Exterminating Company, Inc., Sam Gibbs brought suit against Orkin, claiming that he was constructively discharged for refusing to engage in illegal activity. Gibbs now appeals the district court's summary judgment dismissal of his wrongful discharge cause of action, a common law tort in Oregon. We reverse. Because the facts are familiar to the parties, we recount them only as necessary to explain our decision.

1. Neither state nor federal workplace safety statutes preempt Gibbs' wrongful discharge claim.

Orkin improperly relies on *Walsh v. Consolidated Freightways, Inc.,* 278 Or. 347, 563 P.2d 1205 (1977), to argue that 29 U.S.C. § 660(c) and OR.REV.STAT. § 654.062 preempt Gibbs' tort claim. *Walsh* dealt with a dockworker who claimed to have been fired for complaining about the toxic emissions of a forklift in an enclosed space—a gripe clearly aimed at bettering workplace safety. *Walsh,* 563 P.2d at 1207–08. Additionally, following his termination, Walsh actually filed a complaint under 29 U.S.C. § 660(c). The protected activity in *Walsh* was therefore unquestionably aimed at serving the goals of workplace safety legislation.

The same is not true here. Orkin does not contend and the record does not indicate that Gibbs' alleged refusal to sanction unlicensed pesticide applications was aimed at ensuring the safety of Orkin technicians. Rather, Gibbs' purported opposition to the bare illegality of unlicensed pesticide applications serves the statutory and regulatory scheme established by OR. REV.STAT. chapter 634, the pesticide control statute. Because Gibbs' protected activity was unrelated to workplace safety, *Walsh* does not apply.

More appropriate is the line of cases holding that statutory preemption is improper when two independent legislative schemes (or, in some cases, a legislative scheme and a common law cause of action) target distinct aspects of a defendant's conduct. *See, e.g., Palmer v. Bi–Mart Co.,* 92 Or.App. 470, 758 P.2d 888 (1987) (holding that the worker's compensation statute's exclusive remedy provision did not preempt a female employee's sex discrimination claim when her employer's sexual harassment caused her to develop "stress syndrome"); *Carsner v. Freightliner Corp.,* 69 Or.App. 666, 688 P.2d 398 (1984) (holding that section 654.062 does not preempt the common law tort of intentional infliction of distress because when a defendant's conduct causes one injury within and one injury outside the ambit of a statute, the presence of an exclusive statutory remedy for the former will not bar redress for the latter). These cases make clear that even if Gibbs had a viable statutory claim under section 654.062 for retaliatory discharge targeting his efforts to promote workplace safety, he could still have suffered a distinct common law injury, arising out of the very same conduct,

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

for wrongful discharge targeting his efforts to promote chapter 634's licensing scheme. That Gibbs never complained about workplace safety or mentioned the separate Oregon workplace health and safety regulations that protect workers who use toxic and hazardous chemicals, *see, e.g.*, OR. ADMIN. R. 437–002–0120 to –0139, militates even further against preemption.

Thus, section 654.062 cannot preempt Gibbs' wrongful discharge claim. Preemption by 29 U.S.C. § 660(c), another workplace safety statute, is similarly inappropriate.

■ 2. The district court erred in finding that Gibbs failed sufficiently to evince objectively intolerable working conditions. On summary judgment, we view the record in the light most favorable to Gibbs, the non-moving party. *See Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir.2002). From that perspective, the record shows that 1) Orkin placed Gibbs in a position where he could not avoid breaking the law; and 2) Gibbs could have lost his license due to this illegality. Although other facts exist that contribute to the intolerableness of Gibbs' working conditions, these two facts, taken together, are sufficient to create a jury question.

*First*, a reasonable jury could find that Orkin placed Gibbs in a position such that he could not avoid breaking the law. It is uncontested that despite Gibbs' objection, Orkin sent technicians licensed only in Washington to service the Portland Branch's routes.

Orkin argues, however, that Gibbs could have reassigned routes and acquired reciprocal Oregon licenses for these Washington licensed technicians, thus avoiding any unlicensed applications. The record, viewed in Gibbs' favor, does not substantiate Orkin's argument. At least during March 1999, as many as four Washington technicians may have been sent to Portland even though the Portland Service Branch only serviced two Washington routes. Thus, route reassignment would have only reduced the number of unlicensed pesticide applications. Moreover, a reasonable jury could find that by late February 1999, receiving a valid reciprocal Oregon license involved a three month waiting period. If that were the case, reciprocal licensing would have been useless.

The record also fails to substantiate Orkin's alternative argument that Gibbs could simply have hired more Oregon-licensed technicians so as to avoid unlicensed pesticide applications. Marv Leavitt's deposition testimony explicitly states that Bernie Von Herbulis, not Sam Gibbs, was responsible for hiring new technicians at the Portland Branch. The only arguably contrary portion of the record is an excerpt from Gibbs' deposition transcript, where he is asked, "Do you have any idea how many people *you* hired to replace those people who left?" He responds, "I'm not really certain. Perhaps four or five, but I guess the real answer is no, I don't." The question and response are ambiguous, however, as it is unclear whether the italicized *"you"* refers to Gibbs or Orkin.

In light of Leavitt's testimony as well as the contrary inferences that could be drawn from Gibbs' own testimony, a reasonable jury could find that hiring additional technicians was not an available option for Gibbs. Thus, viewing the record in the light most favorable to him, a jury could conclude that Gibbs could not have avoided Orkin's unlicensed pesticide applications.

*Second*, the record demonstrates that Gibbs' license was jeopardized by these unlicensed pesticide applications even though he was not personally administer-

ing the pesticide. Gibbs testified to this fact and Orkin presented no contrary evidence.

■ 3. Gibbs has sufficiently demonstrated a causal connection between his protected activity—his alleged refusal to sanction unlicensed pesticide applications—and his constructive discharge.

Under Oregon law, "the employee's protected activity must have been a 'substantial factor' in the motivation to discharge the employee." *Estes v. Lewis and Clark College,* 152 Or.App. 372, 954 P.2d 792, 797 (citing *Holien v. Sears, Roebuck and Co.,* 298 Or. 76, 689 P.2d 1292, 1299 n. 5 (1984)). "[T]o be a substantial factor, the employer's wrongful purpose must have been a 'factor that made a difference' in the discharge decision." *Id.*

Gibbs' testimony that Von Herbulis threatened to "get his job" after the January 22 phone conversation, standing alone, creates a jury question as to causation. Additionally, a jury could easily interpret Leavitt's comment that Gibbs should "learn to bend," which took place in the context of a discussion about Gibbs' continued employment, as a requirement that Gibbs engage in illegal activity. Even if his demotion and his purported inability to staff the Portland office also played a part in the events leading up to his resignation, Gibbs' continued objection to the unlicensed use of pesticides could easily be seen as a "factor that made a difference." Gibbs has therefore sufficiently demonstrated a causal connection between his protected activity and his alleged discharge.

REVERSED.