Argued and submitted March 27, 2019; portion of judgment dismissing plaintiff's statutory claims reversed and remanded, otherwise affirmed July 8, 2020

Margarita VERGARA,
an individual,
*Plaintiff-Appellant,*

*v.*

Komal PATEL,
an individual;
Jay Maharaj, Inc., an Oregon corporation,
dba University Inn & Suites; and
Alko 100 LLC, an Oregon limited liability corporation,
dba Eugene University Inn & Suites,
*Defendants-Respondents.*

Lane County Circuit Court
17CV35103; A167209

471 P3d 141

Plaintiff brought against defendants two statutory employment claims and a common-law wrongful discharge claim. She timely filed the original complaint naming an individual as the defendant, but her amended complaint, naming two business entities as defendants, was filed after the limitations period had ran on the statutory claims. The trial court granted summary judgment to defendants on the grounds that the statutory claims were time-barred and that the wrongful discharge claim was unavailable to plaintiff. *Held*: (1) With respect to the statutory claims, plaintiff's amended complaint related back to her original complaint under ORCP 23 C, because the business entities should reasonably have understood from the original complaint that they were the intended defendants. (2) With respect to the wrongful discharge claim, the existence of functionally adequate statutory remedies precluded plaintiff from pursuing that common-law remedy.

Portion of judgment dismissing plaintiff's statutory claims reversed and remanded; otherwise affirmed.

R. Curtis Conover, Judge.

Kate Suisman argued the cause and filed the briefs for appellant.

Alexandra P. Hilsher argued the cause for respondents. Also on the brief were Lillian Marshall-Bass and Hershner Hunter, LLP.

Before Ortega, Presiding Judge, and Powers, Judge, and Linder, Senior Judge.

ORTEGA, P. J.

Portion of judgment dismissing plaintiff's statutory claims reversed and remanded; otherwise affirmed.

**ORTEGA, P. J.**

After being terminated as a hotel housekeeper, plaintiff brought this action against defendants, alleging statutory employment claims under ORS 654.062(5) and ORS 659A.199 and a common-law wrongful discharge claim. She timely filed the original complaint naming an individual as the defendant, but her amended complaint, naming two business entities as defendants, was filed after the limitations period had ran on the statutory claims. Defendants moved for summary judgment on all of the claims, on the grounds that the statutory claims were time-barred and that the wrongful discharge claim was unavailable to plaintiff. The trial court granted defendants' motion in its entirety. On appeal, plaintiff challenges the trial court's dismissal of all of her claims.

We conclude, with respect to the statutory claims, that plaintiff's amended complaint relates back to her original complaint under ORCP 23 C, because the business entities should reasonably have understood from the original complaint that they were the intended defendants. With respect to the wrongful discharge claim, we conclude that the existence of functionally adequate statutory remedies precludes plaintiff from pursuing that common-law remedy. Accordingly, we reverse and remand the trial court's dismissal of plaintiff's statutory claims but affirm its dismissal of plaintiff's wrongful discharge claim.

## I.   FACTUAL AND PROCEDURAL HISTORY

In reviewing the trial court's grant of summary judgment to defendants, we view the record and all reasonable inferences drawable therefrom in the light most favorable to plaintiff, the nonmoving party, to determine whether any genuine issue of material fact exists and whether defendants are entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997).

Plaintiff was employed as a hotel housekeeper from January to August 2016. In that capacity, she frequently came into contact with syringes, drugs, blood, vomit, and toilet facilities. Plaintiff complained to her supervisor and

hotel management many times about being provided with inadequate or no gloves to safely perform her work. After contracting a serious infection that her doctor believed was likely due to exposure at work, plaintiff spoke to her supervisor again about needing gloves to protect herself. She believed that working without gloves would be unsafe and detrimental to her and others' health. Despite the insistence of her supervisor and the hotel manager that she work without gloves, plaintiff refused, and she was subsequently fired.

At the time of plaintiff's termination, the hotel was registered to Jay Maharaj, Inc., under the assumed business name "University Inn & Suites." In December 2016, Alko 100 LLC replaced Jay Maharaj, Inc., as registrant of the hotel and amended the assumed business name to "Eugene University Inn & Suites."[1] Komal Patel was a shareholder and the registered agent of Jay Maharaj, Inc., and she was a managing member and the registered agent of Alko 100 LLC. One other person was a shareholder of Jay Maharaj, Inc., and member of Alko 100 LLC.

Plaintiff filed her original complaint alleging two statutory employment claims on August 14, 2017, one day before the applicable limitations period ran.[2] The caption of that complaint named as the defendant "Komal Patel, an individual, *dba* University Inn & Suites," a factually incorrect statement. In the body of the complaint, plaintiff alleged that, at all material times, "Defendant Komal Patel[] was an individual doing business as University Inn & Suites." The original complaint did not otherwise refer to Patel by name. Rather, in setting out the substantive allegations underlying her claims, plaintiff asserted that "Defendant"

---

[1] Neither party argues that Alko 100 LLC's status as successor registrant to Jay Maharaj, Inc., affects this appeal.

[2] Before initiating this action, plaintiff had filed a complaint with the Oregon Bureau of Labor and Industries (BOLI). Defendants requested that the trial court take judicial notice of the BOLI record. Although the court did not expressly do so, it discussed details of the BOLI proceeding with the parties at the hearing on the summary judgment motion. Therefore, we consider the BOLI record to be a part of the summary judgment record.

That record indicates that BOLI dismissed plaintiff's complaint and, pursuant to ORS 659A.880, gave her 90-day notice of her right to file this action in state court. The parties do not dispute that that placed the filing deadline at August 15, 2017.

employed her "as a housekeeper in Defendant's hotel" and that "Defendant unlawfully discharged [her]." The original complaint also did not mention the business entities by name. On September 8, 2017, plaintiff served Patel with a copy of the original complaint and a summons addressed to "Komal Patel."

Plaintiff's counsel averred that, on October 3, 2017, defendants' counsel informed plaintiff that "she believed the individual defendant, Komal Patel, had been incorrectly sued and that the entities, Jay Maharaj and Alko 100, as the operator of the Hotel during [plaintiff's] employment and the successor operator, were the correct defendants." Plaintiff thereafter served copies of the original complaint and summonses on "Komal Patel, Registered Agent of Jay Maharaj, Inc., *dba* University Inn & Suites" and "Komal Patel, Registered Agent of Alko 100 LLC, *dba* Eugene University Inn & Suites."[3]

On October 9, 2017, plaintiff filed the amended complaint, the caption of which named the defendants as follows: "Komal Patel, an individual, Jay Maharaj, Inc., an Oregon corporation, *dba* University Inn & Suites, and Alko 100 LLC, an Oregon limited liability corporation [*sic*], *dba* Eugene University Inn & Suites." The amended complaint included allegations that:

"2.  During plaintiff's employment, Defendant Jay Maharaj, Inc., was an Oregon corporation doing business as University Inn & Suites.

"3.  University Inn & Suites (the 'Hotel') is a hotel located in Eugene, Oregon, in Lane County.

"4.  Defendant Komal Patel is a natural person who has owned, managed, and operated the Hotel since at least 2006.

"5.  Prior to the incorporation of Defendant Jay Maharaj, Defendant Patel owned, managed and operated

_____

[3] Although the trial court case register shows that service on the business entities occurred on October 11, 2017, the affidavits of service state that service occurred on October 7, 2017. In any event, it is undisputed that all defendants were served with the original complaint within 60 days of its filing. *See* ORS 12.020(2) (action deemed commenced on date of filing of complaint if service effected within 60 days of the filing).

the Hotel as an individual using the assumed business name University Inn.

"6.   Defendant Jay Maharaj is a successor in interest to Defendant Komal Patel.

"7.   In or around December 2016, Defendant Alko 100 LLC registered the assumed business name of Eugene University Inn & Suites. Defendant Alko 100 continued operating the Hotel.

"8.   Defendant Alko 100 is a successor in interest to Defendants Jay Maharaj and Komal Patel.

"9.   Defendant Patel was a shareholder of Defendant Jay Maharaj and is a managing member of Defendant Alko 100.

"10.   Defendant Patel continues to own, manage, and operate the Hotel."

The amended complaint did not otherwise refer to any of the defendants by name, and plaintiff's allegations on the statutory claims were largely unchanged, except that the amended complaint used the plural term "Defendants" where the original complaint had used the singular term "Defendant."

The amended complaint also added a common-law wrongful discharge claim. Under that claim, plaintiff alleged that defendants terminated her after she complained about workplace health and safety conditions and the risk of the spread of communicable diseases. Plaintiff also alleged that Oregon law recognizes the important public policies of protecting a worker's right to a healthy and safe workplace and preventing the spread of communicable diseases.

Defendants moved for summary judgment, contending (1) that plaintiff's statutory claims were time-barred because the amended complaint was untimely and did not meet ORCP 23 C's requirements for relating back to the filing date of the original complaint; (2) that the adequacy of statutory remedies precluded the common-law wrongful discharge claim; and (3) that Patel was not a proper defendant, because plaintiff had made no allegations in the original or amended complaint "against Patel, individually, related to

plaintiff's working environment or the circumstances sur-rounding her termination."

Plaintiff countered that summary judgment was inappropriate as a matter of law or, alternatively, that the trial court should grant a continuance so that she could engage in discovery to develop the facts of the case.

After a hearing on the matter and taking it under advisement, the trial court granted defendants' motion for summary judgment in its entirety and without explanation.

## II.   ANALYSIS

Plaintiff appeals from the ensuing general judg-ment, arguing that defendants were not entitled to sum-mary judgment, because (1) her statutory claims were timely commenced under ORCP 23 C and (2) she was not precluded from asserting the wrongful discharge claim. On appeal, both parties essentially reprise their arguments below.

A.   *Timeliness of Statutory Claims*

With respect to the timeliness of the statutory claims, the parties dispute whether plaintiff "changed the parties" when she explicitly named the business entities as defendants for the first time in the amended complaint. That question affects how ORCP 23 C, which governs the relation back of amended pleadings, applies in this case.

ORCP 23 C provides, in full:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the orig-inal pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the fore-going provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, such party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining any defense on the merits, and (2) knew or should have known that, but for a mis-take concerning the identity of the proper party, the action would have been brought against the party brought in by amendment."

The first sentence of that rule states the general provision that an amended pleading relates back to the filing date of an original pleading so long as the claims arose out of the same conduct, transaction, or occurrence. *Harmon v. Fred Meyer*, 146 Or App 295, 298, 933 P2d 361 (1997). The second sentence of that rule imposes additional notice requirements and "applies only to amendments 'changing the party against whom a claim is asserted.'" *Id.* (quoting ORCP 23 C).

In determining whether an amendment changes a party, we have distinguished between "misnomers" and "misidentifications." *Worthington v. Estate of Milton E. Davis*, 250 Or App 755, 760, 282 P3d 895, *rev den*, 352 Or 565 (2012). A "misnomer" is a plaintiff's mistake "in naming th[e] person or entity [to sue], that is, an error in stating what the [correctly chosen] defendant is *called.*" *Id.* (emphasis in original). A "misidentification," on the other hand, is a plaintiff's mistake "in choosing *which* person or entity to sue." *Id.* (emphasis in original). An amendment to correct a misidentification changes the party and, therefore, triggers the second sentence of ORCP 23 C; an amendment to correct a misnomer does not, but rather relates back in accordance with the first sentence of ORCP 23 C. *Id.* at 759-60. Plaintiff argues that this is a case of misnomer. As we explain, we agree.

Plaintiff primarily relies on *Harmon*, 146 Or App at 297, a "misnomer" case in which the plaintiff, intending to sue The Interlake Companies, Inc., named in the original complaint "Interlake, Inc., a Delaware Corporation," although no such entity operated in Oregon at that time. However, the plaintiff correctly served the complaint on The Interlake Companies, Inc. *Id.* Afterward, he filed an amended complaint to replace "Interlake, Inc., a Delaware Corporation," with "The Interlake Companies, Inc., a Delaware corporation, aka Interlake, Inc." *Id.*

In holding that the amended complaint merely corrected a misnomer and did not "chang[e] the party" so as to trigger the second sentence of ORCP 23 C, we stated the following test:

"If a plaintiff states a name other than defendant's, but serves the correct entity with a copy of the original

complaint, and the correct entity *should reasonably have understood from the pleadings that it is the entity intended to be sued*, then an amendment of the pleadings to correct the misnomer does not bring in a new entity and is not a change in party."

*Id.* at 299-300 (emphasis added). As we further explained, for the purpose of identifying the sued party, "the court must consider the complaint as a whole, including the allegations," and a "natural extension of that analysis requires that the summons also be considered." *Id.* at 300. Applying that analysis in *Harmon*, we made several observations: (1) the name shown in the caption of the original complaint was substantially similar to the defendant's correct name; (2) the allegations in the complaint correctly described the defendant's business and its relationship to the plaintiff; (3) the summons correctly stated the defendant's name and was properly served; and (4) there was no dispute that the plaintiff intended to sue the defendant when he filed and served his original complaint. *Id.* at 301. Based on the foregoing factors, we concluded that the original complaint had brought in The Interlake Companies, Inc., as a defendant, but merely misnamed it; as such, the amendment to correct its name did not constitute a change in parties. *Id.*

We agree that *Harmon* supplies the applicable legal test for determining whether there has been a change in the parties. *See Mitchell v. The Timbers*, 163 Or App 312, 318-19, 987 P2d 1236 (1999) (applying "the rule set forth in *Harmon*" to determine whether an amendment to correct a defendant's name relates back to the original complaint). That inquiry focuses on whether, when served with a copy of the original complaint, "the correct entity should reasonably have understood from the pleadings that it is the entity intended to be sued[.]" *Harmon*, 146 Or App at 299. Applied to the present case—in which the individual named in the original complaint was the registered agent for the business entities named in the amended complaint—the question before us becomes whether Patel, when served with the original complaint naming as the defendant "Komal Patel, an individual, *dba* University Inn & Suites," should reasonably have understood from the pleadings that the business entities Jay Maharaj, Inc., and Alko 100 LLC were the intended

defendants. We conclude that Patel should reasonably have so understood.

"[T]he caption of a complaint is not dispositive," and one may look to "the allegations in the body, among other things," to determine the intended defendant. *Johnson v. Manders*, 127 Or App 147, 149-50, 872 P2d 420, *rev den*, 319 Or 149 (1994). Here, aside from the caption and a body paragraph, the original complaint made no other reference, implicit or explicit, to Patel.[4] Rather, the allegations were against a generically termed "Defendant" and unquestionably concerned plaintiff's employment at and termination from "Defendant's" hotel, "University Inn & Suites." The words in the caption naming the defendant might have started with "Komal Patel, an individual," but the rest of the complaint made clear that the operative words were those that followed: "*dba* University Inn & Suites." Put differently, viewing the complaint in its entirety, it is implicit that the intended defendant of plaintiff's employment action was the entity doing business as the hotel from which she was fired, rather than Patel individually, regardless of whether Patel was doing business as that hotel. We also note that defendants do not contend that the allegations were insufficient for them to identify the implicated hotel. *Compare Mitchell*, 163 Or App at 319 (observing that there was no suggestion of "any actual confusion about the nature or identity" of the tavern where the plaintiff sustained his injury—a factor that supported the conclusion that the defendant, who owned that tavern, in fact understood that he was the entity intended to be sued).

Defendants argue that, even if Patel knew that she was factually not an individual doing business as "University Inn & Suites," as the original complaint alleged, she would reasonably not understand from the original complaint that the intended defendants were, specifically, Jay Maharaj, Inc. (operator of the hotel at the time of plaintiff's termination)

---

[4] Defendants recognized as much when they argued on summary judgment that Patel was not a proper defendant, because the original complaint stated no allegations "against Patel, individually, related to plaintiff's working environment or the circumstances surrounding her termination": "[T]here are no claims asserted against her. There'[re] no ultimate facts alleged against her individually."

and Alko 100 LLC (operator of the hotel at the time that this action was commenced). However, the record indicates that Patel, or at least her attorney, in fact believed that plaintiff had incorrectly sued Patel individually and that she should have sued the business entities Jay Maharaj, Inc., and Alko 100 LLC instead. That demonstrates that "the four corners of the original complaint" contained information sufficient for identifying the business entities as the intended defendants. *See Krauel v. Dykers Corp.*, 173 Or App 336, 341, 21 P3d 1124 (2001) (examining "the four corners of the original complaint" to determine against whom the claim was asserted).

Defendants stress that Patel was a layperson; even if her attorney could identify the correct defendants from the original complaint, she should reasonably not be expected to have that ability. Leaving aside the business sophistication that is suggested by the many corporate hats that Patel wore, we are still not persuaded. Patel first learned about plaintiff's employment concerns when she received notice of plaintiff's BOLI complaint, which had been filed prior to commencement of this action. When Patel viewed the original complaint in this case, she should have understood it with the BOLI complaint serving as context.

That context includes that the allegations in the BOLI complaint and in the original complaint were similar; that the respondent in the BOLI matter was identified as "Komal Patel Dba University Inn"; and that BOLI had copied "Komal Patel, Registrant" and "Komal Patel, Authorized Representative/Agent" in correspondences. The BOLI record also shows that "Respondent" participated in the proceeding, denying plaintiff's allegations on the merits. Given that the caption "Komal Patel Dba University Inn" did not prevent Patel from identifying the correct respondent and participating on the merits before BOLI, the substantially similar caption of the original complaint in this case ("Komal Patel, an individual, *dba* University Inn & Suites") likewise should not prevent Patel from understanding who the intended defendants were, thereby procedurally barring plaintiff's claims. We conclude that Patel should reasonably have understood that plaintiff had intended to sue the legal

entities doing business as "University Inn & Suites" rather than to sue her individually.

Defendants raise two other arguments for why Patel would reasonably not have understood from the original complaint that Jay Maharaj, Inc., and Alko 100 LLC, rather than Patel individually, were the intended defendants. First, defendants point to the fact that plaintiff continued naming Patel as an individual defendant in the amended complaint. Second, defendants argue that Patel was confusingly served with copies of the original complaint three times, each time accompanied by a summons addressed to Patel differently— once in September 2017 in her individual capacity and twice in October 2017 in her capacity as registered agent of the business entities after Patel's attorney contacted plaintiff. Both arguments are flawed as a matter of law for the same reason.

The *Harmon* test asks whether the entity served with a copy of the original complaint "should reasonably have understood *from the pleadings* that it is the entity intended to be sued[.]" *Harmon*, 146 Or App at 299 (emphasis added). That analysis is concerned with the context that existed at the time the entity considered the original pleadings, such as the earlier BOLI proceeding here. Conversely, immaterial to the analysis is "hindsight" based on events subsequent to the original pleadings, such as the amended complaint and the October 2017 services of the original complaint on Patel in her capacity as registered agent of the business entities. Otherwise, the question whether an entity should reasonably have understood that it was the entity intended to be sued would always be a moving target that depends on when it is asked.

Moreover, in this case, plaintiff amended the complaint and served Patel in her "registered agent" capacities only after defendants' counsel had stated that the business entities, rather than Patel individually, were the correct defendants. In other words, defendants had already formed the understanding that the business entities were the intended defendants; plaintiff's subsequent filing of the amended complaint and service of summonses on those entities merely confirmed as much.

We also reject defendants' contention that *Krauel*, 173 Or App at 336, a "misidentification" case, is materially indistinguishable from the present case. In *Krauel*, the plaintiff was injured in a bowling alley and brought a negligence claim against "Dykers Court [*sic*], dba Grand Central Bowl[.]" *Id.* at 338 (alteration in original). The complaint alleged that Dykers operated the bowling alley, but in fact, it simply owned the premises on which the bowling alley was located. *Id.* After the statute of limitations ran, the plaintiff filed amended complaints to correct the spelling of Dykers' name and to add as a defendant "Cascade Entertainment," the entity that actually operated the bowling alley. *Id.* The plaintiff then served both Dykers and Cascade with summonses and copies of the original and amended complaints. *Id.* at 338-39.

We affirmed the trial court's dismissal of that case based on our conclusion, "[a]fter viewing the four corners of the original complaint," that the "plaintiff's original complaint state[d] a claim only against Dykers." *Id.* at 341. But that conclusion was unaccompanied by any discussion about what was contained in the complaint that helped to identify the intended defendant. Here, as we explained above, the allegations of plaintiff's original complaint were such that Patel should reasonably have understood that the intended defendant was the operator of the hotel that had fired plaintiff. Furthermore, *Krauel* is factually inapposite, because Dykers and Cascade were "unrelated" parties, *id.*, whereas here, Patel was indisputably the central figure linking together the named defendants in the original complaint (herself) and amended complaint (business entities of which she was shareholder, managing member, and registered agent).

Finally, to the extent that defendants rely on our description of *Krauel* as a case involving a plaintiff's failure "to identify all of the potentially liable defendants," *Worthington*, 250 Or App at 762, to argue that a similar failure here makes this also a misidentification case, that argument is unavailing. The original complaint, as discussed above, effectively identified the business entities in substance, even though it did not correctly name them.

Therefore, if plaintiff had failed to identify any defendant in the original complaint, that would have been Patel the individual, because, despite the caption, the complaint asserted no claims or ultimate facts against her individually. And defendants do not contend that it was the addition of *Patel* as a defendant that prevents the amended complaint from relating back.[5]

Because we conclude that Patel should reasonably have understood from the original complaint that plaintiff intended to sue Jay Maharaj, Inc., and Alko 100 LLC, the amended complaint merely corrected a misnomer. Accordingly, the amended complaint did not change the parties, and it relates back to the original complaint under the first sentence of ORCP 23 C. The trial court erred in granting summary judgment to defendants on plaintiff's statutory claims. Given our conclusion, we do not address plaintiff's alternative argument that the trial court abused its discretion in denying her request for a continuance to engage in discovery.

B.   *Availability of Wrongful Discharge Claim*

We next address the trial court's dismissal of plaintiff's wrongful discharge claim. Plaintiff argues that the facts alleged in her amended complaint give rise to a cause of action for wrongful discharge, because she was terminated not only for acting to protect her individual health and safety in the workplace, but also for acting to fulfill an important societal obligation: preventing the spread of a communicable disease to the public. In plaintiff's view, no adequate statutory remedy exists to vindicate the wrong that defendants committed when they terminated her for fulfilling that societal obligation, and defendants have made no showing of a legislative intent to preclude the common-law remedy for wrongful discharge. Plaintiff essentially takes the position that, unless there exist *both* an adequate statutory remedy for the allegedly wrongful conduct *and* a legislative intent to preclude the common-law remedy, she may bring the wrongful discharge claim.

---

[5] Plaintiff's opening brief notes that, by not appealing the trial court's judgment in Patel's favor, she has effectively dropped Patel from this case.

By contrast, defendants contend that the sole relevant question is whether an adequate remedy exists for the allegedly wrongful conduct, and they urge us to answer that question in the affirmative. Defendants also assert that the case law does not support plaintiff's distinction between protected action that is motivated by concern for her own safety and action that is motivated by concern for the safety of others; in defendants' view, recognition of such a distinction would significantly expand the tort of wrongful discharge.

To facilitate our analysis, we begin with a review of the relevant case law. The common-law tort of wrongful discharge is a public-policy exception to Oregon's general rule of "at-will" employment. *Babick v. Oregon Arena Corp.*, 333 Or 401, 407, 40 P3d 1059 (2002); *see also Patton v. J. C. Penney Co.*, 301 Or 117, 120, 719 P2d 854 (1986), *abrogated on other grounds by McGanty v. Staudenraus*, 321 Or 532, 901 P2d 841 (1995) ("at-will" rule permits an employer to "discharge an employe[e] at any time and for any reason, absent a contractual, statutory or constitutional requirement" to the contrary). The Oregon Supreme Court first recognized the common-law tort of wrongful discharge in *Nees v. Hocks*, in which the employee was discharged for fulfilling jury duty obligations. 272 Or 210, 218, 536 P2d 512 (1975) (discharge of an "at-will" employee may be actionable when it is "for such a socially undesirable motive that the employer must respond in damages for any injury done"). Soon after *Nees*, the court considered whether a claim for wrongful discharge was available to the plaintiffs in two cases: *Walsh v. Consolidated Freightways*, 278 Or 347, 563 P2d 1205 (1977), and *Brown v. Transcon Lines*, 284 Or 597, 588 P2d 1087 (1978). The parties' primary disagreement—over whether the availability of a wrongful discharge claim depends on the adequacy of existing remedies alone (as defendant posits) or on a legislative intent to preclude the common-law remedy as well (as plaintiff urges)—traces back to those two decisions.

In *Walsh*, notwithstanding its acknowledgment that "the community has a strong interest in maintaining safe working conditions[,]" the court determined that the employee (a dockworker who had been discharged for

complaining to his supervisors about workplace safety violations) could not pursue a wrongful discharge claim, because he already had "a remedy under existing law for his wrongful discharge." 278 Or at 351. The adequacy of that alternate remedy, the court explained, was the "one decisive difference" between *Walsh* and *Nees*. *Id*. Notably, *Walsh* did not inquire whether the legislature had intended, in providing the statutory remedy, to preclude the common-law remedy.

However, a year later in *Brown*, the court revisited the question whether the plaintiff (this time, an employee who had been discharged for filing a workers' compensation claim) may pursue a wrongful discharge claim, and it framed the "primary focus of the problem" thus: "whether by the enactment of [a later] statute the Oregon legislature abolished a previously existing common law cause of action." 284 Or at 602. The *Brown* court stated:

> "As a general rule, if a statute which provides for a new remedy shows no intention to negate, either expressly or by necessary implication, a pre-existing common law remedy, the new remedy will be regarded as merely cumulative, rather than exclusive, with the result that a plaintiff may resort to either the pre-existing remedy or the new remedy. This rule is particularly applicable when the new statutory remedy is not an adequate one."

*Id*. at 610-11 (footnotes omitted). Applying that rule, the court concluded that the statutory remedies available at the time of the plaintiff's discharge were not exclusive, because the legislative history did not evince the legislature's express or implied intent, in adopting the statutory provisions, to abrogate or supersede preexisting common-law remedies. *Id*. at 611-12.

In thus shifting the focus of the inquiry—from the adequacy of existing remedies to the legislative intent behind the enactment of a particular remedy—the court appeared to take a different approach in *Brown* than it did in *Walsh* to address the same legal question. The court attempted to reconcile the decisions, however, stating:

> "We do not believe that our decision in this case is necessarily inconsistent with our decision in [*Walsh*]. Not only was the alleged reason for the discharge of the plaintiff in

that case different from the alleged reason for the discharge of this plaintiff, but this court concluded in *Walsh* (at 352) that existing remedies then available to him under federal statutes (under which he had, in fact, also filed a complaint) were 'adequate to protect both the interests of society * * * and the interests of employees' in such cases, within the meaning of the rule as previously stated in [*Nees*]."

*Id.* at 613 (omission in original). The court also intimated that the statutory remedies available at the time of the plaintiff's discharge were inadequate. *Id.* at 612. Thus, although *Brown* began by shifting the analysis to focus on "legislative intent to abrogate," it seemed to return to "adequacy of existing remedies" as the dispositive factor.

Later Oregon Supreme Court decisions continued with that seeming analytical tension. *Compare Delaney v. Taco Time Int'l.*, 297 Or 10, 16, 681 P2d 114 (1984) ("[W]here an adequate existing remedy protects the interests of society[,] * * * an additional remedy of wrongful discharge will not be accorded.") *with Holien v. Sears, Roebuck and Co.*, 298 Or 76, 689 P2d 1292 (1984) (an employee discharged for resisting sexual harassment may bring a wrongful discharge claim, "unless the provisions of ORS chapter 659 demonstrate the legislature's intent not only to provide what it considered to be adequate remedies to an employe[e] such as plaintiff, but by implication show a legislative intent to abrogate or supersede any common law remedy for damages").

As it did in *Brown*, the court in *Holien* first concluded that nothing evinced that the legislature, in providing a statutory remedy for the wrongful conduct, intended to eliminate the common-law remedy for wrongful discharge. 298 Or at 96. Then notably, as it had in *Brown*, the court proceeded to address the issue of the adequacy of existing statutory remedies, concluding that they "fail[ed] to capture the personal nature of the injury done to a wrongfully discharged employe[e] as an individual and * * * to appreciate the relevant dimensions of the problem." *Id.* at 97. Again, despite placing the primary focus of its analysis on "legislative intent to abrogate," the court returned to "adequacy of existing remedies" as a component of the analysis.

This court's attempts to adhere to the foregoing precedents have further entrenched the inconsistency in Oregon's wrongful discharge law. Two cases relied on by the parties in this case are illustrative. First, in *Olsen v. Deschutes County*, 204 Or App 7, 127 P3d 655, *rev den*, 341 Or 80 (2006), we considered whether public employees who were fired for raising concerns about safety violations at a respite care facility may bring a wrongful discharge claim. Citing *Holien*, we stated that, to preclude the plaintiffs' claim, the defendant "must demonstrate *both* that the remedy for violation of ORS 659.035 is adequate in comparison to the remedy available under a common-law tort action *and also* that the legislature intended the statute to abrogate the common law." *Id.* at 14 (emphases added). Thus, in *Olsen*, we expressly stated— where the Oregon Supreme Court arguably has not—that both the requirements of "adequate existing remedies" and "legislative intent to abrogate the common-law remedy" must be present. Applying that rule, we concluded that the defendant met the first but not the second requirement; therefore, the plaintiffs' wrongful discharge claim was not precluded as a matter of law. *Id.* at 14-17.

Then, in *Deatherage v. Johnson*, 230 Or App 422, 215 P3d 125 (2009), we considered whether an employee who had been fired in retaliation for reporting workplace safety violations to the Oregon Occupational Safety and Health Division may pursue a wrongful discharge claim. Although the plaintiff argued that *Olsen* controlled, we rejected that case's applicability, stating that it "does not address a claim under the statute at issue in this case, ORS 654.062." *Id.* at 425. Ultimately, we adhered to *Walsh*'s singular focus on the adequacy of statutory remedies and held that, "unless the Supreme Court repudiates or modifies its holding in *Walsh*, a plaintiff alleging retaliatory termination must bring that claim, if at all, under either a federal or a state statute." *Id.* at 426.

Returning to the present case, plaintiff argues that *Olsen* governs and defendants contend that *Deatherage* controls. For two reasons, we agree with defendant. First, we observe that wrongful discharge was not intended to be a tort of general application; rather, it is "an interstitial tort,

designed to fill a gap where a discharge in violation of public policy would otherwise not be adequately remedied." *Dunwoody v. Handskill Corp.*, 185 Or App 605, 613, 60 P3d 1135 (2003). The *Olsen* majority's conclusion that both adequate statutory remedies and a legislative intent to abrogate the common-law remedy are required to preclude a claim for wrongful discharge would seem to enlarge the tort in a way that contravenes that principle.

Second, as in *Deatherage* and unlike in *Olsen*, one of the statutes at issue in this case is ORS 654.062. The *Walsh* court stated:

> "We feel that existing remedies are adequate to protect both the interests of society in maintaining safe working conditions and the interests of employees who are discharged for complaining about safety and health problems. We also note that ORS 654.062(5) now provides a similar remedy under state law although, admittedly, these provisions were not in effect at the time of the conduct in question. Therefore, we find it unnecessary to extend an additional tort remedy to cover this kind of situation."

278 Or at 352-53 (footnote omitted). *Walsh* is directly on point, and we are bound by that decision. Therefore, we conclude that adequate statutory remedies exist under ORS 654.062 to vindicate the wrongful conduct that plaintiff alleges here, and that factor alone precludes her wrongful discharge claim.

Finally, we address plaintiff's argument regarding the significance of the dual motivations behind her refusal to work without protective gloves—to protect individual health and safety and to prevent the spread of communicable diseases. Essentially, she posits that, even if ORS 654.062 functions as an adequate remedy to protect her personal interest in a safe workplace, it does not function as an adequate remedy to protect the public interest in disease prevention. To the extent that the different motivations underlying an employee's singular protected action matters, and assuming that ORS 654.062 is inadequate to vindicate the wrong that defendants caused in terminating plaintiff for acting to fulfill a societal obligation, plaintiff still has not established a wrongful discharge claim.

Our courts have recognized two bases for a wrongful discharge claim: (1) "when the discharge is for exercising a job-related right that reflects an important public policy" and (2) "when the discharge is for fulfilling some important public duty[.]" *Babick*, 333 Or at 407 (citations omitted). Plaintiff argues that this is a "public duty" case, because she was fulfilling an important societal obligation by acting to stop the spread of diseases.[6] In reviewing wrongful discharge claims, courts "must *find* a public duty, not create one, using constitutional and statutory provisions and case law." *Id.* at 407-08 (emphasis in original; citation and internal quotation marks omitted); *see also Lamson v. Crater Lake Motors, Inc.*, 346 Or 628, 637, 216 P3d 852 (2009) (stating same). In *Babick*, the Oregon Supreme Court considered the viability of the wrongful discharge claim of private security guards who were fired for arresting concert-goers engaging in assaultive behaviors and illicit substance possession. The court explained that it was "concerned here with a duty to perform a specific act (the arrest of lawbreakers by private citizens or private security personnel), and the statutes cited have nothing to say about that kind of act." *Babick*, 333 Or at 409.

The same lack of specificity prevents plaintiff from pursuing her wrongful discharge claim based on the "public duty" theory in this case. Examining the statutes that plaintiff cites as relevant—namely, ORS 431.110, ORS 431.142, ORS 431.155, and ORS 433.010—we acknowledge that those provisions evince a general public policy in favor of healthy communities and preventing communicable diseases. However, ORS 431.110, ORS 431.155, and ORS 431.142 concern, respectively, the general powers of the Oregon Health Authority (OHA), the enforcement powers of the OHA, and the functions of communicable disease control programs. None of those statutes impose any duty on plaintiff to prevent the spread of communicable diseases. Lastly, although ORS 433.010(1) provides that "[n]o person shall willfully cause the spread of any communicable disease within this state[,]" plaintiff did not allege any such willful action here.

_____

[6] Although plaintiff also pleaded this as a "job-related rights" case in her amended complaint, on appeal, plaintiff appears to rely solely on the "public duty" theory.

## III.   CONCLUSION

In sum, as to plaintiff's statutory claims, we conclude that Patel should reasonably have understood from the original complaint that plaintiff intended to sue the business entities Jay Maharaj, Inc., and Alko 100 LLC. Therefore, the amended complaint merely corrected a misnomer and did not change the parties, and it relates back to the timely filing of the original complaint under the first sentence of ORCP 23 C. Furthermore, we conclude that the existence of adequate statutory remedies precludes plaintiff's wrongful discharge claim.

Portion of judgment dismissing plaintiff's statutory claims reversed and remanded; otherwise affirmed.